IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

John A. Tripp,                              )       Civil Action No. 8:12-cv-3450-TMC-JDA
                         Plaintiff,         )
                                            )
           vs.                              )       **REPORT AND RECOMMENDATION**
                                            )       **OF MAGISTRATE JUDGE**
Carolyn W. Colvin[1],                       )
Commissioner of Social Security,            )
                                            )
                         Defendant.         )
_____            )

This matter is before the Court for a Report and Recommendation pursuant to

28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.[2]  Plaintiff brought this

action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the

Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for

disability insurance benefits ("DIB").  For the reasons set forth below, it is recommended

that the decision of the Commissioner be affirmed.

## PROCEDURAL HISTORY

On April 28, 2010, Plaintiff filed an application for DIB, alleging an onset of disability

date of December 31, 2008.  [R. 127–30.] The Social Security Administration ("the

Administration") denied the claim initially on August 17, 2010 [R. 77–80], and on

reconsideration on February 18, 2011 [R. 83–84].  Plaintiff requested a hearing before an

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February13, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

administrative law judge ("ALJ"), and on January 17, 2012, ALJ Thomas G. Henderson conducted a de novo hearing on Plaintiff's claims.  [R. 36–63.]

The ALJ issued a decision on February 2, 2012, finding Plaintiff not disabled under the Social Security Act ("the Act").  [R. 10–28.]  At Step 1,[3] the ALJ found Plaintiff last met the insured status requirements of the Act on December 31, 2010, and had not engaged in substantial gainful activity during the period from his amended alleged onset date of June 4, 2010[4], through his date last insured of December 31, 2010.  [R. 15, Findings 1 & 2.]  At Step 2, the ALJ found Plaintiff had severe impairments of osteopenia, substance induced mood disorder, and depressive disorder.  [R. 15, Finding 3.]  At Step 3, the ALJ determined none of these impairments or combination of impairments met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; the ALJ specifically considered Listings 14.09, 1.02, 1.03, 1.04, 12.04 and 12.09.  [R. 15–17, Finding 4.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ made the following findings as to Plaintiff's residual functional capacity ("RFC"):

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform sedentary work[5] as defined in 20 CFR 404.1567(a) except with occasional posturals activities, no climbing or crawling, and avoiding hazards such as unprotected heights or moving machinery. The claimant is capable of performing simple routine repetitive tasks with no ongoing interaction with the general public.

---

[3] The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

[4] See, R. 40.

[5] Sedentary exertional work is described by the Commissioner of the Social Security Administration as requiring lifting and carrying no more than 10 pounds at a time, sitting for six hours in an eight-hour workday, and standing and walking for two hours in an eight-hour workday. [R. 17, n.1.]

[R. 17, Finding 5.] Based on this RFC, at Step 4, the ALJ found Plaintiff was unable to perform any past relevant work [R. 23–24, Finding 6]; however, based on Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed [R. 23, Finding 10].

Plaintiff requested Appeals Council review of the ALJ's decision, but the Council declined review. [R. 1–4.] Plaintiff filed this action for judicial review on December 6, 2012. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and requests that the Court reverse and award benefits because the ALJ

1. grossly overestimates Plaintiff's level of functioning (i.e., Plaintiff's RFC) and is quite selective in choosing those medical records to which significant weight was afforded [Doc. 13 at 5]; and

2. failed to follow the treating physician rule by improperly rejecting Dr. Rencken's opinion that Plaintiff is unable to work on a regular basis due to his medical problems [*id.* at 6].

The Commissioner, on the other hand, submits that ALJ's decision is supported by substantial evidence, specifically arguing the ALJ

1. properly determined Plaintiff's physical and mental RFC findings based on substantial evidence [Doc. 15 at 7–9]; and,

2. properly considered Dr. Rencken's opinion [*id.* at 9–10].

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the

3

evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek  v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to

5

allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the

6

reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[6]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

---

[6]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

7

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).  The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. § 404.1520.  Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–.1575.

## B.     *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* § 404.1521.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses.  *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. § 423(d)(2)(B).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[7] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. § 404.1560(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily

---

[7]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a).

from an exertional impairment, without significant nonexertional factors.[8] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.     Developing the Record

---

[8]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a(a). A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 404.1569a(c)(1).

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c). Similarly, where a treating physician has merely made

12

conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1527(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative

examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 404.1517.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.     Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs."  *Coffman v. Bowen*, 829 F.2d 514, 518

14

(4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered.  Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

15

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms."  *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## **APPLICATION AND ANALYSIS**

## **Residual Functional Capacity Analysis**

16

Plaintiff argues the ALJ "grossly overestimates [Plaintiff's] level of functioning and is quite selective in choosing those medical records to which significant weight was afforded." [Doc. 13 at 5.]  In other words, the Court construes that Plaintiff challenges the ALJ's RFC analysis.

The Administration has provided a definition of RFC and explained what an RFC assessment accomplishes:

> RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. . . .

SSR 96-8p, 61 Fed. Reg. 34,474–01, at 34,475 (July 2, 1996) (internal citation and footnotes omitted).  The RFC assessment must first identify Plaintiff's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945. *See id.*  Only after this identification and assessment may RFC be expressed in terms of the exertional levels of work: sedentary, light, medium, heavy, and very heavy.  *Id.*

Additionally, the Administration has determined that in assessing RFC, the ALJ

> must consider only limitations and restrictions attributable to medically determinable impairments. It is incorrect to find that [a claimant] has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain, due to factors such as age or height,

17

> or whether the [claimant] had ever engaged in certain activities in his or her past relevant work (e.g., lifting heavy weights.) Age and body habitus (i.e., natural body build, physique, constitution, size, and weight, insofar as they are unrelated to the [claimant]'s medically determinable impairment(s) and related symptoms) are not factors in assessing RFC . . . .

SSR 96-8p, 61 Fed. Reg. at 34,476. To assess a claimant's RFC, the ALJ must consider all relevant evidence in the record, including medical history, medical signs, laboratory findings, lay evidence, and medical source statements. *Id.* at 34,477. SSR 96-8p specifically states, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.* at 34,478.

### The ALJ's Decision and Pertinent Medical History

In assessing Plaintiff's RFC, the ALJ first found "the existence of a medically determinable physical or mental impairment, which could reasonably be expected to produce the symptoms alleged by the [Plaintiff]." [R. 18.] The ALJ considered the following evidence of record:

> Medical records from Dr. Gunther Rencken of Walterboro Family Practice Associates, the Medical University of South Carolina (MUSC) and Dr. Charles Nivens show the claimant had a history of a T6 vertebral fracture with lumbar and thoracic pain due to osteopenia. In May 20I0, the claimant told Dr. Rencken he was having some trouble controlling his pain, especially since he was not drinking. Examination showed tenderness to palpation to the mid-spine and lumbosacral areas with 5/5 strength in the upper and lower extremities bilaterally. Dr. Rencken diagnosed the claimant with lumbosacral pain and T6 vertebral fracture and increased his dose of pain medication (Oxycontin) to 10 milligrams. (Exhibit12F)
>
> An examination by Dr. Nivens in June 2010 showed decreased thoracic range of motion but motor strength testing revealed

normal findings. The claimant was described as not in any apparent distress and he demonstrated normal muscle tone, no atrophy, normal deep tendon reflexes, and good coordination. An x-rays showed compression fracture of T6 without retropulsion of the bone. (Exhibit 16F)

When seen for medication refills in August 2010, Dr. Rencken reduced the claimant's dose of Oxycontin to 5 milligrams. Later that month, the claimant reported his pain was not controlled with this dose of medication. He was prescribed MS Contin, which is a sustained release medication, and referred to MUSC Orthopedic Department. (Exhibit 12F)

Upon examination at MUSC in September 2010, the claimant was described as in no acute distress. There was tenderness over the T6 area but he was neurovascularly intact with 5/5 strength throughout both upper and lower extremities, his gait was only mildly antalgic, and he was able to ambulate without assistive devices. (Exhibit 11F) In October 2010, Dr. Rencken reported the claimant was doing fairly well. (Exhibit 17F) A CT scan performed at MUSC in December 2010 showed well-healed compression fractures at the thoracic level with generalized osteopenia. In January 2011, Dr. John Glasser reported the claimant's fractures did not appear to have any obvious pseudoarthrosis, so he would not recommend a typical cement injection. In addition, Dr. Glasser would not write the claimant a prescription for any sedating or narcotic medications because he did not feel comfortable that the claimant was a reasonable candidate for these, as the claimant did most of his pain management through Dr. Rencken. (Exhibit 11F)

The claimant was not treated in the office but received medication refills in December 2010, January 2011, and February 2011. When last seen by Dr. Rencken in March 2011, the claimant was switched back to Oxycontin for chronic pain. Examination findings were notable for tenderness to palpation over the thoracic spine; however, he demonstrated 5/5 strength in the upper and lower extremities bilaterally. The claimant was described as not in any apparent distress. (Exhibit 17F)

In a letter dated November 29, 2011, Dr. Rencken stated that the claimant took pain medication, which had been somewhat successful in reducing his pain but did not totally alleviate his pain. He noted that the claimant was able to get out and do some activities and that most of his pain involved cutting the

grass. Dr. Rencken recommended that the claimant lift no more than ten pounds and avoid frequent lifting, bending, and stooping. (Exhibit 15F)

The medical evidence of record also shows that the claimant had a history of severe alcoholism; however, treatment notes in May 2010, August 2010, and March 2011 indicate that he had been abstinent from alcohol. The claimant was prescribed medications (Citalopram and Valium) by his primary care physician and when last seen in March 2011, Dr. Rencken reported that the claimant had been doing quite well. (Exhibits 12F, 11F and 17F)

When seen by Dr. Cashton Spivey in July 2010 for a consultative psychological evaluation, the claimant's mood was mildly sad, his affect was slightly blunted, his thought processes were logical and coherent, and his attention and concentration functioning was within normal limits. The claimant was able to perform serial Ts, recall two of three objects after five minutes, and accurately reproduce a drawing. On the mini-mental status examination, the claimant obtained a score of 28 out of a possible 30, which is within normal limits and indicates no major cognitive impairment. Dr. Spivey rendered a diagnosis of depressive disorder and history of alcohol dependence.   He estimated the claimant's current global assessment of functioning (GAF) rating at 55, which is described by the Diagnostic and Statistical Manual of Mental Disorders- 4th Edition (DSM-IV) as characterized by moderate symptoms and moderate difficulty in social, occupational, or school functioning. The claimant's GAF level for the past twelve months was estimated at 65, which reflects mild symptoms with the ability to generally function "pretty well." (Exhibit 7F)

[R. 18–19.]

Upon considering the above evidence, the ALJ concluded that Plaintiff's "medically determinable impairment could reasonably be expected to cause some of the alleged symptoms; however, the statements by the claimant concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible to the extent they are

inconsistent with the above residual functional capacity assessment." [R. 20.] The ALJ further concluded that,

> although the claimant reported constant pain, the medical evidence fails to reveal that the claimant was ever in any acute distress and examinations were essentially benign. While the claimant has a history of a thoracic fracture with lumbar and thoracic pain due to osteopenia, there is no indication that the claimant has required emergency treatment or inpatient hospitalization for this condition. In spite of his allegations of disabling pain, the claimant has not sought additional treatment including physical therapy, biofeedback, surgery, or treatment from a pain clinic.
>
> The claimant has alleged various side effects from the use of medications; however, the medical records, such as office treatment notes, do not corroborate those allegations. As for his alleged use of a cane, there is no mention in the treatment records that a cane was ever prescribed by a treating physician. Moreover, the evidence of record fails to reveal any signs of muscular atrophy, strength deficits, circulatory compromise, neurological deficits, muscle spasms, or change in weight, which may be reliable indicators of long-standing, severe or intense pain, physical inactivity, and/or depression.
>
> While the claimant has a history of substance induced mood disorder and depressive disorder with treatment including medications prescribed by his treating physician, he has not received any treatment by a psychiatrist or been hospitalized for a mental impairment since his amended alleged onset date. Although the claimant alleges inability to concentrate and stay focused, Dr. Spivey reported the claimant's concentration functioning was within normal limits and he had normal cognition. The claimant performed serial 7's, recalled two of three objects after five minutes, and accurately reproduced a drawing. (Exhibit 7F)
>
> Despite the allegations of severe functional limitations, the evidence of record reveals that the claimant has retained a significant range of activities of daily living. As discussed previously, the claimant was able to care for personal hygiene independently, supervise his autistic son during the day while his wife worked, do household chores, prepare simple meals, do laundry, watch television, read, check the mail, cut the

grass, drive, take trash to the dump, manage his finances, go shopping, socialize with others, and play checkers and card games. (Exhibits 5E, 7F, and 15F) Such activities are inconsistent with complaints of disabling symptoms and limitations. While I note that the claimant's ability to perform some physical tasks (at his own pace and in his own manner) is insufficient to establish that the claimant can engage in substantial gainful activity, as noted in the claimant's activities as described above, these activities rise above the ability to work only a few hours a day or to work only on an intermittent basis and indicate functional abilities substantially greater than those alleged.

[R. 20.]

### Discussion

While Plaintiff contends the ALJ overestimated Plaintiff's level of functioning and was biased in his consideration of medical records, Plaintiff failed explain how the ALJ overestimated Plaintiff's functioning and/or what medical evidence the ALJ failed to consider.  Plaintiff merely leaves it to the Court to determine what, if any, error the ALJ may have made in the RFC analysis.  However, as stated previously, the Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct law was applied.

Upon consideration, the Court finds the ALJ's decision both summarizes and discusses the medical records, objective medical evidence, and non-medical evidence the ALJ considered in determining Plaintiff's functional limitations.  In addition to highlighting the substantial evidence that exists to support his RFC determination, the ALJ's review, discussion, and analysis also explain why he assessed Plaintiff with those particular limitations.  In sum, the ALJ's decision logically explains how he determined Plaintiff's RFC—a determination expressly reserved for the ALJ—and Plaintiff has failed to address

how the ALJ's RFC assessment is contrary to any evidence of record. Accordingly, the ALJ's decision with respect to the RFC assessment is supported by substantial evidence.

**Weight Assigned to the Treating Physician Opinion**

Plaintiff argues the ALJ erred by failing to follow the treating physician rule by improperly rejecting Dr. Rencken's opinion that Plaintiff "is unable to work on a regular basis due to his medical problems." [Doc. 13 at 5–6.] Plaintiff contends that "there does not exist persuasive contradictory evidence to rebut the opinion of Dr. Rencken." [*Id.*]

### *The ALJ's Evaluation of Dr. Gunter Rencken's Opinion*

In evaluating the medical evidence of record, the ALJ specifically addressed the treatment notes and findings of medical sources, including Dr. Gunther Rencken ("Dr. Rencken") of Walterboro Family Practice Associates, regarding the nature and severity of Plaintiff's impairments and resulting limitations. [*See* R. 18–22.] Treatment notes from Dr. Rencken indicate he saw Plaintiff twice in 2008 related to alcoholism and alcoholic seizures [R. 317]; twice in 2009 on follow-up due to his alcoholism, complaints of low back discomfort, and depression [R. 316]; and once in 2010 for painful urination, increased depression, and drinking [R. 315]. On November 29, 2011, Dr. Rencken provided the following opinion letter to counsel for Plaintiff:

> [Plaintiff] is a long-standing patient in our practice. I have been seeing him for several years. He has a history of back pain which has been quite disabling for him. He often has pain down into his legs as well. He first injured his back in 1987 and has had treatment since then. I see him on average about every 3 months. He has had problems affording his healthcare, and this sometimes limits his access to appropriate care. He has a history of low back surgery and has had rods placed in his low back. He has also had some compression fractures of his thoracic spine. He has some numbness in his toes and a lot of pain especially in his right back. This causes him a lot of

fatigue. He does have pain on a daily basis.  He does get out and do some activities occasionally. He notes that most of his pain involves cutting the grass in the summer. He spends about 10-15 minutes doing this and then rests for about 2 hours before he resumes his activity.  He rates his pain as a 10 on a scale 1-10.  He also has fatigue because of his ongoing pain and also rates this as a 10 on a daily basis.  He does take pain medication on a daily basis which does give him some relief but does not totally alleviate his pain so he has ongoing issues.

He does do a lot of lying down during the day. He is unable to sit or stand for extended periods without his pain and fatigue becoming more severe.  Based on his recent and past exams, I do not believe he would he able to do much in the way of heavy lifting, and I would not recommend he lift much more than 10 Ibs.  I do not recommend he do frequent lifting, bending, or stooping.

His medications include Morphine 30 mg. ER bid, Valium 5 mg, tid, Oxycodone 5 mg, qid, Mobic qd, Celexa 20 mg. qd.  In regard to his medications, we have had multiple changes to his medicines in the past few years to try and get him some relief and avoid side effects. This has been somewhat successful, but again we are only able to reduce his pain but not totally alleviate it.  I do think his pain would get worse if he were to get up and try to work on a daily basis.

He is mentally competent to handle his own affairs.  He has the significant physical limitations that I think will certainly limit his employability. I do not think he is going to be able to work on a regular basis.

[R. 379–80.]

### *Discussion*

The ALJ is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the

physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Courts typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (quoting *Mastro*, 270 F.3d at 178). While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, the ALJ must still weigh the medical opinion based on the factors listed in 20 C.F.R. § 404.1527(c).

The opinion of a treating physician is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). Additionally, Social Security Ruling ("SSR") 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

1996 WL 374188, at *4 (July 2, 1996). However, not every opinion offered by a treating source is entitled to deference:

> Medical sources often offer opinions about whether an individual who has applied for title II or title XVI disability benefits is "disabled" or "unable to work," or make similar statements of opinions. In addition, they sometimes offer opinions in other work-related terms; for example, about an

25

> individual's ability to do past relevant work or any other type of work. Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner. Such opinions on these issues must not be disregarded. However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(e) (stating an ALJ does not have to "give any special significance to the source of an opinion on issues reserved to the Commissioner," such as an opinion that the claimant is disabled, the claimant's impairment or impairments meets or equals a listing, or the claimant has a certain residual functional capacity).

In this case, the ALJ did not give Dr. Rencken's opinion controlling weight. Instead, the ALJ considered Dr. Rencken's opinion and determined that some weight was appropriately assigned to his opinion that Plaintiff could lift up to ten pounds and should avoid frequent lifting, bending, and stooping. [R. 21.] The ALJ noted that these limitations were supported by the medical evidence and generally consistent with the RFC for sedentary work. [*Id.*] However, the ALJ determined that Dr. Rencken's opinion that Plaintiff is "unemployable" is entitled to no weight because the statement is speculative and directed to an issue reserved to the Commissioner. [*Id.*] Plaintiff disagrees with the ALJ's determination because there is no contradictory evidence rebutting Dr. Rencken's opinion that Plaintiff is "unable to work on a regular basis due to his medical problems"; however, Plaintiff fails to point the Court to any evidence of record showing that the weight assignment was based on factual or legal error. The Court notes that Dr. Rencken's opinion actually provides that Plaintiff "has [] significant physical limitations that I think will certainly limit his employability. *I do not think* he is going to be able to work on a regular

26

basis. " [R. 380 (emphasis added).]   Contrary to Plaintiff's representation, Dr. Rencken never opined that Plaintiff could not work on a regular basis; he clearly indicated, however, that he thought Plaintiff would be limited in his ability to work.   Nevertheless, Plaintiff has failed to explain how Dr. Rencken's opinion is contrary to the ALJ's ultimate determination that Plaintiff can perform sedentary work with certain postural limitations and being further limited to simple routine repetitive tasks with no ongoing interaction with the general public.

Additionally, the ALJ weighed and relied on the opinions of other treating physicians and state agency non-examining doctors in finding Plaintiff not disabled.   For instance, the ALJ noted that,

> [i]n July 2010 and February 2011, State Agency medical consultants found that the Plaintiff had the ability to perform light work activity with occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, no climbing of ladders, ropes, and scaffolds, and avoiding concentrated exposure to hazards such as unprotected heights or moving machinery. (Exhibits 8F and 13F)  Regarding the claimant's mental functioning they found that the claimant had mild limitations in his activities of daily living, moderate limitations regarding social functioning, moderate limitations regarding the ability to concentrate or persist, and one or two episodes of decompensation of an extended duration. They further determined the claimant was able to understand, remember, and carry out simple instructions and would perform best in situation that did not require on-going interaction with the general public. (Exhibits 9F and 10F) Although these physicians were non-examining and they did not have the opportunity to review any evidence submitted after the reconsideration determination, their opinions have been given great weight, as they are consistent with the evidence of record.

[R. 21.]

Without more from Plaintiff and upon review of the record, the Court concludes the ALJ properly considered and weighed Dr. Rencken's opinion, logically explained his

reasoning for the rejecting portions of it, and the ALJ's decision is supported by substantial evidence and is not contrary to law.  *See Radford v. Comm'r*, 734 F.3d 288, 295–96 (4th Cir. 2013) (explaining that the ALJ should discuss which evidence the ALJ found credible and why, and it is the Commissioner's judgment to determine the weight of the evidence so long as the decision is supported by substantial evidence).

## CONCLUSION AND RECOMMENDATION

Wherefore, based on the foregoing, it is recommended that the decision of the Commissioner be AFFIRMED.

IT IS SO RECOMMENDED.


June10, 2014                          s/Jacquelyn D. Austin
Greenville, South Carolina           United States Magistrate Judge